UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLORIA GAINES-HANNA, et al.,

        Plaintiffs,

                                  CASE NO. 04-CV-74910-DT
                                  JUDGE JOHN CORBETT O'MEARA
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

  v.

FARMINGTON PUBLIC SCHOOLS,
et al.,

        Defendants.
_____/

**OPINION AND ORDER DENYING
PLAINTIFF'S EMERGENCY MOTION TO QUASH AND SEEKING PROTECTIVE
ORDERS FROM A SCHEDULED INTRUSIVE UNAUTHORIZED PSYCHIATRIC
EVALUATION, AND PROTECTION FROM THE INSPECTION OR RELEASING OF
ANY OF PLAINTIFF'S PRIVATE MEDICAL RECORDS UNDER HIPPA
PROTECTION AND THE PRIVACY ACT OF 1974 (Doc. Ent. 160)**

**Table of Contents**

I.     **OPINION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
     **A.**    **Plaintiff's Complaint and Defendants' Answers** . . . . . . . . . . . . . . . . . . . . . . **2**
     **B.**    **Certain claims have been dismissed.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
     **C.**    **Plaintiff's Emergency Motion to Quash and for Protective Order** . . . . . . . . **5**
     **D.**    **Applicable Federal Rules of Civil Procedure** . . . . . . . . . . . . . . . . . . . . . . . **6**
           **1.**    **Depositions and Discovery (Federal Rules of Civil Procedure 26-37)**
               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
           **2.**    **Trials (Federal Rules of Civil Procedure 38-53)** . . . . . . . . . . . . . . . **9**
     **E.**    **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
           **1.**    **Plaintiff shall submit to an independent psychiatric evaluation.** . . **10**
           **2.**    **Plaintiff shall permit the inspection and release of her private**
               **medical and psychiatric records.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**
           **3.**    **Plaintiff's request for Fed. R. Civ. P. 11 sanctions is denied.** . . . . . **24**

II.    **ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**

I.      **OPINION**

A.      **Plaintiff's Complaint and Defendants' Answers**

On December 16, 2004, plaintiffs filed a complaint alleging causes of action for constitutional violations and seeking a declaratory judgment, injunctive relief and monetary damages. (Doc. Ent. 1 [Compl.]). Plaintiffs are Gloria Gaines-Hanna and her two minor children, Najib Gaines-Hanna and Najiba Gaines-Hanna. Compl. ¶¶ 4-5. Defendants are the Farmington Public School District, the Farmington Public School Board of Trustees, and various employees of the school system, as well as Farmington Hills Police Officer Duane Fox (¶ 48) and volunteer Doris Malchie (¶ 59). Compl. ¶¶ 6-59.

The facts underlying plaintiff's complaint took place from 1993 into November 2004. Compl. ¶¶ 60-698. Plaintiffs' causes of action include:

[I]     VIOLATIONS OF CONSTITUTIONAL RIGHTS 42 U.S.C. sec. 1983 of 5th and 14th AMENDMENTS TO DENIAL OF DUE PROCESS AND EQUAL PROTECTION

[II]    VIOLATIONS OF 1st and 14th AMENDMENT FROM FREEDOM OF EXPRESSION AND SPEECH, and RETALIATION

[III]   VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964;[1] TITLE 42 U.S.C. § 2000d; 42 U.S.C. § 1983; TITLE IX OF THE EDUCATION AMENDMENT[S] [OF] 1972[2]

[IV]    VIOLATION OF TITLE IX EDUCATION AMENDMENTS OF 1972, 901; TITLE 20 [U.S.C.] § 1681 BASED UPON HOSTILE SCHOOL ENVIRONMENT AND SEX HARASSMENT AND GENDER DISCRIMINATION; TITLE VI; TITLE 42 [U.S.C. § 2000d] (1964); 42 § US.13981c AND UNDER 42 U.S.C. § 1983; RETALIATION

[V]     CONSPIRACY TO INTERFERE AND VIOLATE PLAINTIFFS' CIVIL RIGHTS 42 U.S.C[.] § 1985(3); NEGLECT TO PREVENT 42 U.S.[C.] § 1986; 42 [U.S.C.] §14141a, 1983 §1383; VIOLATIONS OF 5TH AND 14TH AMENDMENTS; TITLE 18 U.S.C. § 241, 242; sec 1001

---

[1]The Civil Rights Act of 1964 is codified at 42 U.S.C. §§ 2000a - 2000h-6.

[2]The Education Amendments of 1972 are codified at 7 U.S.C. § 326a; 20 U.S.C. §§ 1651 - 1688; 42 U.S.C. § 2756a.

[VI]     VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1994; 42 U.S.C.
         § 2000e5; 2000e-2(a)(1) CIVIL RIGHTS ACT OF 1991[3] HOSTILE
         SCHOOL ENVIRONMENT BASED UPON RACE, COLOR, NATIONAL
         OR[I]GIN, SEX BIAS ACTION

[VII]    WILLFUL DENIAL OF EQUAL EDUCATIONAL OPPORTUNITY TITLE
         20 U.S.C. § 1701; § 1703; AND § 1706 ARISING FROM DELIBERATE
         SEGREGATION, TITLE 42 [U.S.C.] § 2000a; §2000a-1 BASED UPON
         RACE COLOR, NATIONAL ORIGIN GENDER, AND SEX BIAS; AND
         IMPLIED RIGHT OF ACTION EQUITABLE REMEDIAL RELIEF

[VIII]   FRAUD AND LIBEL: SPECIAL DAMAGES[:] VIOLATIONS OF
         RECORDS IN THE FAMILY EDUCATIONAL RIGHTS AND PRIVACY
         (FERPA) ACT,[4] TITLE 20 U.S.C. § 1232g; MICHIGAN FREEDOM OF
         INFORMATION ACT (FOIA) MCLA 15.231 et. Seq.; AND VIOLATION
         OF MCL 380.10; REQUEST FOR THE JUDICIAL ENFORCEMENT OF
         FEDERAL AND MICHIGAN RIGHTS

[IX]     WILLFUL VIOLATIONS OF MICHIGAN ELLIOTT-LARSEN CIVIL
         RIGHT[S] ACT; INTENTIONA[L] ACTS OF DISCRIMINATION AND
         SEXUAL HARASSMENT; CONS[P]IRACY; PENDENT MICHIGAN
         STATE CLAIM ACTION FOR COMPENSATORY AND EXEMPLARY
         DAMAGES ([MICH. COMP. LAWS §] 37.2102 SEC 102(1); AND 37.2701
         SEC 701; AND 37.2801 SEC. 801(1) FOR CIVIL ACTION; 42 U.S.C. §
         2000c-8[)].

[X]      INTENTIONAL INFLICTION OF MENTAL AND EMOTIONAL
         DISTRESS AND MENTAL ANGUISH-MICHIGAN PENDENT CLAIM
         FOR-COMPENSATORY AND EXEMPLARY DAMAGES

[XI]     PLAINTIFFS REQUEST FOR DECLARATORY JUDGMENT
         PURSUANT TO TITLE 28 U.S.C. § 2201 AND FRCP 57; AND RULE
         38(a)(b) AND 39(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Compl. ¶¶ 669-723, p. 276.[5]  Her true bill totals $10,000,000.00.  Compl. at 274-276.[6]

---

[3]The Civil Rights Act of 1991 is codified at 2 U.S.C. § 601, §§ 1201, 1202, 1219, 1220.

[4]Family Educational Rights and Privacy Act of 1974 is codified at 20 U.S.C. § 1232g.

[5]It appears that page 268 of the complaint was not scanned into the docket.

[6]On December 30, 2004, defendant Farmington Public School District filed an ex parte
motion for extension of time in which to file answer to complaint.  (Doc. Ent. 66).  On January 4,
2005, Judge O'Meara entered an order providing that all defendants were permitted until February
28, 2005 by which to file an answer to the complaint.  (Doc. Ent. 68).

3

On January 6, 2005, defendant Officers Rose Mackie and Dwayne Fox filed an answer to the complaint, affirmative defenses, and reliance upon plaintiff's demand for trial by jury. (Doc. Ent. 67).[7] On May 11, 2005, several defendants filed an answer to plaintiff's complaint, affirmative defenses and reliance on jury demand. (Doc. Ent. 99). On June 15, 2005, several defendants filed an answer to plaintiff's complaint, affirmative defenses and reliance on jury demand. (Doc. Ent. 136). On July 14, 2005, several defendants filed an amended answer to plaintiff's complaint, affirmative defenses and reliance on jury demand. (Doc. Ent. 139).[8]

**B.      Certain claims have been dismissed.**

On January 26, 2005, all defendants (except Rose Mackie, Dwayne Fox, and Angela Smith) filed a motion for summary judgment. (Doc. Ent. 77). On May 4, 2005, Judge O'Meara entered an order granting defendants' motion to dismiss claims of the Hanna children. Furthermore, Judge O'Meara's order dismissed plaintiff Gloria Gaines-Hanna's claim that defendants violated the Family Education Rights and Privacy Act. (Doc. Ent. 96).[9]

---

[7]On February 28, 2005, plaintiff filed answers to defendants affirmative defenses. (Doc. Ent. 82).

[8]On August 2, 2005, plaintiff filed what was in part a "motion to strike" defendants' amended answers to complaint and affirmative defenses. (Doc. Ent. 142). On August 19, 2005, the defendant teachers filed a motion for leave to file an amended/corrected responsive pleading. (Doc. Ent. 144). Specifically, defendants sought to have their July 14, 2005 (Doc. Ent. 139) answer stand. On September 9, 2005, Judge O'Meara entered an order granting defendants' motion for leave to file an amended/corrected responsive pleading and denying plaintiff's August 2, 2005 motion. (Doc. Ent. 147).

[9]On May 18, 2005, plaintiff filed a motion to set aside the order granting defendants' motion to dismiss claims of the Gaines-Hanna children. (Doc. Ent. 101). On June 13, 2005, Judge O'Meara entered an order  which in part denied plaintiff's motion. (Doc. Ent. 135).

On February 15, 2005, Judge O'Meara entered an order dismissing state law claims - specifically mentioning those included in Counts VIII, IX and X of plaintiffs' complaint. (Doc. Ent. 79); (Doc. Ent. 160 Ex. 2).[10]

## C.   Plaintiff's Emergency Motion to Quash and for Protective Order

On February 17, 2006, plaintiff filed an "emergency motion to quash and protective orders from a scheduled intrusive unauthorized psychiatric evaluation, and protection from the inspection or releasing of any of plaintiff's private medical records under [Health Insurance Portability and Accountability Act of 1996] protection and the Privacy Act of 1974[.]" (Doc. Ent. 160 [Mtn.]). Plaintiff notes that her intentional infliction of emotional distress claim has been dismissed, and access to her medical history could result in irreparable harm and injury. She also argues that her medical history is irrelevant to her civil rights claims, defendants' efforts to obtain this information is harassment, and access to this information would violate her right to confidentiality and medical privacy. Mtn. at 2.[11]   She seeks an order protecting her from a psychiatric evaluation, the

---

[10]On May 13, 2005, Judge O'Meara entered a scheduling order setting the following deadlines: discovery - November 15, 2005; witness list - September 13, 2005; dispositive motions - November 15, 2005; and referral to mediation panel - November 15, 2005. (Doc. Ent. 100). On November 4, 2005, defendant Farmington School District filed a motion to schedule a status conference pursuant to Fed. R. Civ. P. 16(a). (Doc. Ent. 155). On November 7, 2005, Judge O'Meara entered an amended scheduling order setting the following deadlines: discovery - March 15, 2006; witness list - December 14, 2005; dispositive motions - April 15, 2006; and referral to mediation panel - March 15, 2006 (Doc. Ent. 156).

[11]Plaintiff refers to *Shawn McClain v. The University of Michigan Board of Regents & the Michigan Medical Center* (6th Cir. May 6, 2003); however, she does not provide a citation for this case and the Court has been unable to locate this case on Westlaw. She also refers to Fed. R. Civ. P. 36; however, this rule governs requests for admission and does not appear to be applicable to the instant motion.

waiver/release of her psychotherapist-patient privileged communications, and the release of her psychiatric or medical records.  Mtn. at 3; Mtn. at 11.[12]

On March 14, 2006, defendants Fox and Mackie filed a response to plaintiff's motion in which they request that plaintiff's motion be denied.  (Doc. Ent. 167 at 9).  Specifically, they argue that (I) "Plaintiff has placed her mental status in controversy and thus, the ordering of an independent psychiatric evaluation should be allowed[;]" and (II) "Plaintiff's medical and psychiatric records should be produced as she placed her mental status in controversy[.]" Doc. Ent. 167 at 2.

On March 17, 2006, the defendant teachers, administrators and school district filed a response to plaintiff's motion in which they request that the Court "order Plaintiff to appear for a psychiatric evaluation consistent with [Fed. R. Civ. P. 35]."  (Doc. Ent. 172 at 5).

On March 23, 2006, defendant school teachers and school employees filed a brief in concurrence and joinder in defendants Fox and Mackie's response to plaintiff's motion to quash psychological evaluation and for protective order, arguing as follows: "Plaintiff is claiming mental and emotional distress damages in this lawsuit.  She has put her mental and emotional well-being in controversy.  Therefore, good cause exists to compel her to comply and cooperate with an independent psychological evaluation."  (Doc. Ent. 176).

At the March 27, 2006 hearing, plaintiff spoke on her own behalf.  Various defendants were represented by attorneys Kenneth G. Galica, Andrew R. Biscoglia and Michael D. Weaver.

**D.     Applicable Federal Rules of Civil Procedure**

---

[12]On February 22, 2006, Judge O'Meara referred plaintiff's motion to me for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A).  (Doc. Ent. 161).  On February 27, 2006, the hearing on plaintiff's motion was noticed for March 27, 2006.  (Doc. Ent. 162).

1.      **Depositions and Discovery (Federal Rules of Civil Procedure 26-37)**

Part V of the Federal Rules of Civil Procedure, Rules 26 through 37, governs depositions and

discovery. Rule 26, which governs the scope and limits of discovery, states in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to
> the claim or defense of any party, including the existence, description, nature,
> custody, condition, and location of any books, documents, or other tangible things
> and the identity and location of persons having knowledge of any discoverable
> matter. For good cause, the court may order discovery of any matter relevant to the
> subject matter involved in the action. Relevant information need not be admissible
> at the trial if the discovery appears reasonably calculated to lead to the discovery of
> admissible evidence. All discovery is subject to the limitations imposed by Rule
> 26(b)(2)(I), (ii), and (iii).

Fed. R. Civ. P. Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2) provides: "The frequency or extent of use

of the discovery methods otherwise permitted under these rules and by any local rule shall be limited

by the court if it determines that: (I) the discovery sought is unreasonably cumulative or duplicative,

or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the

information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely

benefit, taking into account the needs of the case, the amount in controversy, the parties' resources,

the importance of the issues at stake in the litigation, and the importance of the proposed discovery

in resolving the issues." Fed. R. Civ. P. 26(b)(2).

Protective orders are discussed in Rule 26(c):

> Upon motion by a party or by the person from whom discovery is sought,
> accompanied by a certification that the movant has in good faith conferred or
> attempted to confer with other affected parties in an effort to resolve the dispute
> without court action, and for good cause shown, the court in which the action is
> pending or alternatively, on matters relating to a deposition, the court in the district
> where the deposition is to be taken may make any order which justice requires to
> protect a party or person from annoyance, embarrassment, oppression, or undue
> burden or expense, including one or more of the following:

7

(1) that the disclosure or discovery not be had;

(2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;

(5) that discovery be conducted with no one present except persons designated by the court;

(6) that a deposition, after being sealed, be opened only by order of the court;

(7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way; and

(8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or other person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

Fed. R. Civ. P. 26(c).

The physical and mental examinations of persons are discussed in Rule 35. As to an order for examination, the rule provides:

When the mental or physical condition (including the blood group) of a party or of a person in the custody or under the legal control of a party, is *in controversy*, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for *good cause* shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Rule 35(a) (emphasis added). In *Schlagenhauf v. Holder*, 379 U.S. 104 (1964), the Supreme Court examined the meaning of Rule 35's "in controversy" and "good cause" requirements:

They are not met by mere conclusory allegations of the pleadings--nor by mere relevance to the case--but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.

8

Obviously, what may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired information by other means is also relevant.

Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause,' which requirements, as the Court of Appeals in this case itself recognized, are necessarily related.  This does not, of course, mean that the movant must prove his case on the merits in order to meet the requirements for a mental or physical examination. Nor does it mean that an evidentiary hearing is required in all cases. This may be necessary in some cases, but in other cases the showing could be made by affidavits or other usual methods short of a hearing. It does mean, though, that the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule.

Of course, there are situations where the pleadings alone are sufficient to meet these requirements. A plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury. This is not only true as to a plaintiff, but applies equally to a defendant who asserts his mental or physical condition as a defense to a claim, such as, for example, where insanity is asserted as a defense to a divorce action.

*Schlagenhauf*, 379 U.S. at 118-119 (internal citations omitted).

## 2.      Trials (Federal Rules of Civil Procedure 38-53)

Part VI of the Federal Rules of Civil Procedure, Rules 38-53, governs trials.  Subpoenas are discussed in Rule 45.  As to the protection of persons subject to subpoenas, the rule provides:

On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(I) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

9

(iv) subjects a person to undue burden.

Fed .R. Civ. P. 45(c)(3)(A).

**E.     Analysis**

**1.     Plaintiff shall submit to an independent psychiatric evaluation.**

Plaintiff claims she has attended four (4) depositions totaling twenty-five (25) hours in length (beginning July 2005 through January 2006), during which time she was asked many questions regarding her medical and psychiatric status.  She registered her objections on the basis of privilege. Mtn. at 7; Mtn. at 8 ¶ 2.

On February 6, 2006, defense counsel (Kenneth G. Galica) mailed plaintiff a letter dated February 1, 2006, advising her that he had scheduled an independent psychiatric evaluation for February 20, 2006 at 2:00 p.m. with Dr. Raymond Mercier, M.D. at Dr. Mercier's office in Troy, Michigan.   Apparently, this letter was accompanied by a notice of independent psychiatric examination.  Mtn. Ex. 1.

**a.     Parties' arguments**

Plaintiff questions whether defense counsel Galica can order her to "attend a Psychiatric Evaluation where there is no longer an "Intentional Infliction of Emotional Distress [claim] before this [] Court?"  Mtn. at 2 ¶ 1.  Plaintiff also claims that defense counsel Galica had not complied with Fed. R. Civ. P. 35(a).  Mtn. at 2-3 ¶¶ 2-3, at 8 ¶ 4.  She claims that defense counsel intentionally violated Fed. R. Civ. P. 35(a) when he scheduled a psychiatric evaluation without a motion showing "good cause" and a Court order.  Mtn. at 5.  Plaintiff claims that "an unauthorized psychiatric evaluation would cause irreparable harm and injury to plaintiff where no privilege[] was waived[.]" Mtn. at 6.  She also claims that defendants did not provide a court order requiring a mental

examination warranted by good cause and did not "state the manner, the scope or any specifics on how it was going to be given." She further claims that, despite knowing she had registered objections at her depositions, defendants did not file a motion pursuant to Fed. R. Civ. P. 35(a). Mtn. at 8 ¶ 4. Plaintiff claims that her complaint does not place at issue malpractice or "mental or insanity claims[.]" Mtn. at 9 ¶ 6. She is concerned about irreparable injury, claiming "there is no way to unscramble the egg that is scrambled by the disclosure[.]" Mtn. at 10 ¶ 8. In conclusion, plaintiff states that defendant's request that plaintiff submit to a psychiatric examination does not outweigh her right to the psychotherapist-patient privilege - a privilege that is "'rooted in the imperative need for confidence and trust.'" *Jaffee v. Redmond*, 518 U.S. 1, 10 (1996)(citing *Trammel v. United States*, 445 U.S. 40, 51 (1980)); Mtn. at 11 ¶ 9. Plaintiff claims that the defendant's need for discovery does not act to waive her rights where "she has not explicitly waived [the] psychiatrist-patient privilege." Mtn. at 11 ¶ 9. At the hearing, plaintiff stated that a psychiatric evaluation was not relevant.

Defendants Fox and Mackie argue that "[p]laintiff has placed her mental status in controversy and thus, the ordering of an independent psychiatric evaluation should be allowed." Doc. Ent. 167 at 5. Defendants argue that "Plaintiff's mental status and/or injury . . . clearly remains in controversy as there are a litany of pending federal Constitutional and statutory violations claims which give[] rise to Plaintiff's alleged mental injuries." Citing *Schlagenhauf*, defendants Fox and Mackie contend that "[t]he instant case is one where the pleadings alone are sufficient to satisfy the Fed. R. Civ. P. 35 requirements of 'in controversy' and 'good cause.'" In support of this statement, defendants contend that plaintiff's complaint contains numerous federal claims involving mental injury and identifies actual damages and punitive damages in the request for relief. Doc. Ent. 167

11

at 6.  According to defendants, the mention of actual damages "is indicative that Plaintiff pleads mental injury, and thus, fairness would require that Defendant be allowed to request an examination of Plaintiff."  Doc. Ent. 167 at 6-7.  Defendants also contend that "the independent psychiatric examination will not violate the psychotherapist-patient privilege as none attaches[,]" and "the examination would not violate any privilege as it is not ordered for the purposes of treatment."  Doc. Ent. 167 at 7.

Defendants teachers, administrators and school district contend that the damages sought by plaintiff warrant a psychiatric or psychological examination.  Citing ¶ 686 of the complaint, these defendants argue that "Plaintiff does not delineate the type of damages sought.  Based upon Plaintiff's complaint, it is logical to assume that Plaintiff is seeking damages for non-economic damages; i.e., pain and suffering.  Since Plaintiff did not sustain a physical injury, the logical conclusion is that Plaintiff's non-economic damages are based upon alleged emotional distress-type damages."  Doc. Ent. 172 at 3.  Citing Fed. R. Civ. P. 35(a), these defendants contend that "[c]learly, based upon a plain reading of Plaintiff's Complaint, Plaintiff's mental condition is at issue.  Accordingly, an examination with a licensed psychiatrist or psychologist is in order."  Doc. Ent. 172 at 4.  Next, these defendants contend that "plaintiff's assertion that she has answered all questions is false[.]"  These defendants contend that plaintiff would not answer questions regarding her mental well-being on the basis that such information was not relevant.  Also, they contend that plaintiff would not answer questions regarding custody of her children.  These defendants "are willing to execute a protective order indicating that the materials in question, along with any expert reports, are to be used for the purposes of this litigation, and, at the conclusion of this litigation and any and all appeals, the information would either be returned to Plaintiff or destroyed."  Doc. Ent. 172 at 4.

Conversely, they state: "if Plaintiff executes a stipulation indicating that she claims no damages other than economic damages, presumably, there would be no need for an independent psychiatric examination." In the absence of such a stipulation, they argue, they would "suffer extreme prejudice if [they] are not permitted to have Plaintiff examined by a psychiatric expert consistent with Fed. R. Civ. P. 35." Doc. Ent. 172 at 5.[13]

**b.    Applicable law**

The privilege issue before the Court today should be analyzed under federal law. *Fox v. Gates Corp.*, 179 F.R.D. 303, 305 (D. Colo. 1998) ("[A]s an initial matter . . . federal privilege law governs the issues presented as plaintiff's sole claim for relief arises under a federal statute.") (citing Fed. R. Evid. 501). *See also LeFave v. Symbios, Inc.*, No. CIV.A. 99-Z-1217, 2000 WL 1644154, *2 (D. Colo. Apr. 14, 2000) ("[F]ederal privilege law governs the issues presented as plaintiff's claims for relief arise under a federal statute[.]")

That being said, in the instant motion plaintiff relies upon the Supreme Court's decision in *Jaffee v. Redmond*, 518 U.S. 1 (1996), wherein the Court stated: "[A] privilege protecting confidential communications between a psychotherapist and her patient 'promotes sufficiently important interests to outweigh the need for probative evidence[.]'" *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) (citing *Trammel v. United States*, 445 U.S. 40, 51 (1980)). "[T]he psychotherapist-patient privilege is 'rooted in the imperative need for confidence and trust.'" *Jaffee*, 518 U.S. at 10 (citing *Trammel*, 445 U.S. at 51). "Because we agree with the judgment of the state legislatures and the Advisory Committee that a psychotherapist-patient privilege will serve a 'public

---

[13]On rebuttal at the March 27, 2006 motion hearing, plaintiff claimed that she has economic damages.

13

good transcending the normally predominant principle of utilizing all rational means for ascertaining truth,' *Trammel*, 445 U.S., at 50[], we hold that confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). "Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. As we explained in *Upjohn*, if the purpose of the privilege is to be served, the participants in the confidential conversation 'must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.'" *Jaffee*, 518 U.S. at 18 (citing *Upjohn Company v. United States*, 449 U.S. 383, 393 (1981)). "A rule that authorizes the recognition of new privileges on a case-by-case basis makes it appropriate to define the details of new privileges in a like manner." *Jaffee*, 518 U.S. at 18.

One of the issues presented by the instant motion is whether plaintiff has waived the psychotherapist-patient privilege. Even the *Jaffee* Court stated that "[l]ike other testimonial privileges, the patient may of course waive the protection." *Jaffee*, 518 U.S. at 15 n.14. The Court also stated that "[a]lthough it would be premature to speculate about most future developments in the federal psychotherapist privilege, we do not doubt that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist." *Jaffee*, 518 U.S. at 18 n.19.

14

"Since *Jaffee* was decided, two lines of cases have developed addressing the circumstances under which the psychotherapist-patient privilege will be waived.  The first line of cases takes a broad view, finding waiver where the court concludes that the patient-litigant has placed his or her mental or emotional condition 'at issue.'  Within this group, some courts find that one places one's mental or emotional condition at issue merely by claiming damages for emotional distress, while others require more.  The other line of cases takes a significantly narrower view, finding waiver only where the privileged communications themselves are put in issue by the patient-litigant." *Fritsch v. City of Chula Vista*, 187 F.R.D. 614, 621 (S. D. Ca. 1999).  "[T]he *Jaffee* court envisioned that the privilege would protect from disclosure confidential psychotherapist-patient communications even if the patient placed his mental or emotional condition at issue in litigation." *Fritsch*, 187 F.R.D. at 631.  "Many, if not most, people would undoubtedly prefer to submit to a mental examination, in which they have a degree of control over what information is revealed, than to have the records of their past psychotherapy sessions disclosed to their adversaries in litigation." *Fritsch*, 187 F.R.D. at 632.

Therefore, post-*Jaffee* case law examining Rule 35(a) is persuasive with regard to whether a plaintiff has waived her psychotherapist-patient privilege such that she is subject to an independent medical examination.  "Fed.R.Civ.P. 35(a) authorizes a court to order a party to submit to a physical or mental examination 'on motion for good cause shown.'  To obtain such an order, the moving party need show that: (1) the mental or physical condition of the party is in controversy; and (2) goods cause exists for the examination." *Young v. Reconstructive Orthopaedic Associates, II, P.C.*, No. CIV.A. 03-2034, 2004 WL 1813232, *2 (E. D. Pa. July 21, 2004).

"Case law is clear that a party waives the federal common law psychotherapist-patient privilege by placing his or her mental condition at issue." *Young*, 2004 WL 1813232, *2 n.2 (citing cases, including *Schlagenhauf*, 379 U.S. at 118). "A minority of courts have held that a plaintiff puts her mental condition 'in controversy' by simply making a claim for emotional distress damages as part of an employment discrimination claim." *Fox*, 179 F.R.D. at 307. "The majority of courts have held that plaintiffs do not place their mental condition in controversy merely by claiming damages for mental anguish or 'garden variety' emotional distress." *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 553 (N. D. Ga. 2001). "A similar majority . . . also recognize that a mental exam is warranted when one or more of the following factors are present: (1) a tort claim is asserted for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder is made; (3) a claim of unusually severe emotional distress is made; (4) plaintiff intends to offer expert testimony in support of claim for emotional distress damages; and/or (5) plaintiff concedes that her mental condition is in controversy within the meaning of Rule 35." *Stevenson*, 201 F.R.D. at 554. *See also Fox*, 179 F.R.D. at 307.

The "in controversy" factors are not dissimilar to those examined to determine "good cause". "The majority of courts will not find good cause to require a plaintiff to submit to a medical examination unless, in addition to a claim for emotional distress damages, one or more of the following factors is also present: (1) plaintiff has asserted a specific cause of action for intentional or negligent infliction of emotional distress; (2) plaintiff has alleged a specific mental or psychiatric injury or disorder, (3) plaintiff has claimed unusually severe emotional distress; (4) plaintiff has offered expert testimony in support of his claim for emotional distress damages; and (5) plaintiff

16

concedes that his mental condition is 'in controversy' within the meaning of Fed.R.Civ.P. 35(a)." *LeFave*, 2000 WL 1644154, *4.

Furthermore, "courts tend to order [Rule 35(a)] examinations where '(1) there is a separate tort claim for emotional distress, (2) the plaintiff alleges that he suffers from a severe ongoing mental injury or psychiatric disorder, (3) the plaintiff will offer expert testimony to support the claim, or (4) the plaintiff concedes his mental condition is in controversy.'" *Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127, 131 (E. D. Pa. 1997) (citing *Smith v. J.I. Case Corp.*, 163 F.R.D. 229, 230 (E. D. Pa.1995)).

**c.    Analysis**

I conclude that plaintiff's complaint presents more than a garden variety emotional distress claim.  This conclusion is supported by examination of the "in controversy" and "good cause" factors discussed above.

Two of these factors are not present.  Although there was originally a state law claim of intentional infliction of emotional distress, that claim has since been dismissed by Judge O'Meara's February 15, 2005 order.  Furthermore, plaintiff does not expressly concede that her mental condition is in controversy.

However, two of the factors are present.  It appears from plaintiff's September 14, 2005 witness list, which includes Marc R. Hirsch, Ph.d, Clinical Psychologist, and M. A. Baima, M.D., P.C. (Doc. Ent. 151 at 3), that plaintiff will be offering medical expert testimony in support of her case.

Also, plaintiff has arguably alleged unusually severe emotional distress.  Within Count XI of the complaint [plaintiff's request for declaratory judgment pursuant to 28 U.S.C. § 2201

("Creation of remedy") and Federal Rules of Civil Procedure 38 ("Jury Trial of Right"), 39 ("Trial

by Jury or by the Court") and 57 ("Declaratory Judgments")], plaintiffs state:

> Declaration that a permanent inju[n]ction against Defendants for causing Plaintiffs
> intentional infliction of mental and emotional distress, and mental anguish, shock,
> embarrassment, loss of self-esteem, disgrace, humiliation, loss of enjoyment of life,
> which forced Plaintiffs into medical treatment, and to incur expenses for medical and
> psychological treatment, therapy and counseling from the gravity of the Defendants
> misconduct, the patte[r]n of 'continuous violation' and criminal obstruction of
> justice[.] Along with fraudulent misuse of their schools authority to block Plaintiffs
> reporting, was such subversive conduct that a judicial 'order to cease[] is needed for
> relief.

Compl. ¶ 722.[14]  In addition to ¶ 722's (Count XI's) mention of medical and psychological expenses,

several paragraphs of the complaint seek compensatory damages, i.e. ¶¶ 673 (Count I), 678 (Count

II), 682 (Count III), 686 (Count IV),[15] 690 (Count V), 694 (Count VI), 697 (Count VII), 705 (Count

VIII or IX), 709 (Count X).  Read together, it is possible that plaintiff is seeking compensation for

medical and psychological treatment.

---

[14]Judge O'Meara did not specifically mention Count XI in his February 15, 2005 order, nor
does Count XI appear to be affected by Judge O'Meara's May 4, 2005 order dismissing the claims
of the Hanna children and dismissing plaintiff's Family Education Rights and Privacy Act claim
within Count VIII.  Therefore, this Count still appears to be at issue in plaintiff's case.

[15]Within Count IV of the complaint, plaintiffs state:

> Plaintiff demands judgment . . . against all named Defendants jointly and severally,
> for actual, general, special, compensatory damages, in the amount, $1,000,000 and
> further demands judgment against each of said Defendants jointly and severally, for
> punitive damages in the amount, $1,000,000, plus the costs of this action; and such
> other relief deemed to be just and equitable from damages in an amount to be proven
> at trial.

Compl. ¶ 686.  Defendants teachers, administrators and school district use this paragraph in support
of their assumption that "[p]laintiff is seeking damages for non-economic damages; i.e., pain and
suffering[,]" and their conclusion that "[p]laintiff's non-economic damages are based upon alleged
emotional distress-type damages."  Doc. Ent. 172 at 3.

As noted, defendants teachers, administrators and school district "are willing to execute a protective order indicating that the materials in question, along with any expert reports, are to be used for the purposes of this litigation, and, at the conclusion of this litigation and any and all appeals, the information would either be returned to Plaintiff or destroyed." Doc. Ent. 172 at 4.

In light of the foregoing, plaintiff shall submit to an independent psychiatric examination, subject to the aforementioned proposed protective order.[16] To the extent plaintiff takes issue with defendants' selection of Dr. Mercier - claiming that he is an adverse expert witness and that defendants are "attempting to go around the fairness process[,]" Mtn. at 9 ¶ 6 - Rule 35(a) permits the Court to "order the party to submit to a physical or mental examination *by a suitably licensed or certified examiner*[.]" Fed. R. Civ. P. 35(a) (emphasis added). Therefore, the Rule 35(a) examination may be conducted by Dr. Mercier at his office on a time and date to be agreed up on by the parties. The scope of the examination shall be limited to the effects of the events underlying plaintiff's complaint.

––––––––––––––––––––

[16]In this opinion and order, I have relied upon cases which have determined that Rule 35(a) exams were not warranted. For example, "a plaintiff who makes claims of emotional distress damages in an employment discrimination case [has not] placed her mental condition 'in controversy' within the meaning of [Fed. R. Civ. P. 35(a)]." *LeFave*, 2000 WL 1644154, *4. Also, the good cause requirement had not been met where "[p]laintiff [did not] allege a specific mental or psychiatric injury or disorder, nor [did] she claim unusually severe emotional distress. [She had] not indicted that expert testimony [would] be offered to support her emotional distress claims and, [she had] not conceded that her mental condition [was] 'in controversy' within the meaning of Fed. R. Civ. P. 35(a)." *LeFave*, 2000 WL 1644154, *4.

Also, in *Fox*, plaintiff brought an employment discrimination case in which she sought "damages for emotional distress, pain and suffering, humiliation, embarrassment and anguish[.]" *Fox*, 179 F.R.D. at 304. Within the discussion regarding independent medical examination, the Court found that "plaintiff ha[d] not placed her mental condition 'in controversy' within the meaning of Fed. R. Civ. P. 35(a), nor ha[d] defendant shown good cause for an examination." *Fox*, 179 F.R.D. at 308.

These cases are distinguishable, because they are employment discrimination cases. Furthermore, I have concluded that plaintiff's complaint places her mental condition in controversy.

**2.**    **Plaintiff shall permit the inspection and release of her private medical and psychiatric records.**

**a.**    **Parties' arguments**

Plaintiff questions whether defense counsel may subpoena her medical and psychiatric records "where her claims are encompassed on Civil Rights Deprivation of Constitutional rights and not on claims of physical and mental injuries?"  Mtn. at 3 ¶ 4.  She claims that "[d]efendants['] request for [her] psychiatric-medical records [is] irrelevant to [her] Civil Rights violation, and is used for harassment and intimidation[,]" and defendants' use of her medical history would violate her rights to confidentiality and medical privacy set forth in *Jaffee* and HIPAA. Mtn. at 6.  Plaintiff claims she provided the information regarding her medical history and her doctors' names at her depositions.  She also claims to have provided dates and contact information, as well as documents. Plaintiff claims she has not waived her psychiatrist-patient privilege.  She claims she informed defense counsel that she "did not have a psychiatric disorder nor was she willing to be subject to any psychiatric evaluation or release any medical information regarding [her] past o[r] present medical or mental [status] other than the documents already provided, because it was private and privileged, irrelevant, and could cause irreparable harm."  Mtn. at 7.  She also claims that, during her depositions, she objected to inquiries regarding her physical and mental history on the bases of privilege and privacy. Mtn. at 8 ¶ 2.

Defendants Fox and Mackie argue that "Plaintiff's medical and psychiatric records should be produced as she has placed her mental status in [controversy]."  Doc. Ent. 167 at 7.  According to defendants, they have asked plaintiff to sign "HIPAA-compliant authorizations for the release of her medical and psychiatric records[,]" and there is a compelling need for such records.  Doc. Ent. 167 at 7-8.  Citing Fed. R. Civ. P. 26(b) and *LeFave*, defendants Fox and Mackie argue that plaintiff

"has complained of psychiatric injury spanning a period of at least twelve years.  In order for Defendants to properly defend this matter, it is imperative that Defendants have the opportunity to examine [medical and psychiatric] records to ascertain whether the alleged injury that Plaintiff claims is related to Defendants."  Doc. Ent. 167 at 8.  In the absence of such records, they argue, there will be "no means to controvert the claims of psychiatric injury and the purported cause of them."  Doc. Ent. 167 at 8-9.

**b.    Applicable law**

i.      "[T]he [psychotherapist-patient] privilege protects only psychotherapy records, not general medical records."  *Stevenson*,  201 F.R.D. 551, 558.  "[P]lacing one's mental condition at issue in a civil action waives the federal common law psychotherapist-patient privilege[.]"  *Sarko*, 170 F.R.D. at 130.  "[D]etermining whether the plaintiff has placed her mental condition at issue so as to waive the privilege is analogous to, and should be generally consistent with, the analysis conducted when a Rule 35(a) examination is requested."  *Stevenson*, 201 F.R.D. at 557 (citing *Jackson v. Chubb Corp.*, 193 F.R.D. 216, 226 n.8 (D. N. J. 2000) and *Fritsch*, 187 F.R.D. at 623-624 & n.4).  *See also Dominguez-Silva v. Harvey*, No. Civ.3:04-CV-135-JTC, 2006 WL 826091, *1 n.1 (N. D. Ga. March 23, 2006) (slip copy).  "[M]ost of the cases addressing waiver have been consistent with the Rule 35(a) standard by finding waiver only where something other than garden variety emotional distress has been alleged."  *Stevenson*, 201 F.R.D. at 557.[17]

---

[17]There are some cases that do not equate the standards set forth in *Jaffee* and Rule 35(a).  *See Fritsch*, 187 F.R.D. at 632 ("[I]n establishing an evidentiary privilege for psychotherapist-patient records, the *Jaffee* court set a higher standard than Rule 35(a)'s 'in controversy' requirement."); *Fritsch*, 187 F.R.D. at 624 n.5 ("The 'in controversy' requirement of Rule 35(a) would, in this Court's view, allow greater latitude for discovery than the evidentiary privilege established in *Jaffee*."); *Lanning v. Southeastern Pennsylvania Transp. Authority (SEPTA)*, Nos. Civ. A. 97-593, Civ. A. 97-1161, 1997 WL 597905, *2 (E. D. Pa. Sept. 17, 1997) (comparing

Even equating these standards with my foregoing conclusion that plaintiff must submit to a Rule 35(a) examination, I have considered some post-*Jaffee* cases where disclosure of psychotherapy communications or records was permitted.   In *LeFave*, plaintiff brought an employment discrimination case claiming severe and lasting embarrassment, humiliation and anguish and seeking compensation for pain and suffering, emotional trauma and humiliation. *LeFave*, 2000 WL 1644154, *1.  The court recognized that "[t]he *Jaffee* court did not specifically address the issue of whether a person [could] waive the psychotherapist-patient privilege by initiating a legal action in which she claims damages for emotional distress."  Relying upon the Tenth Circuit's pre-*Jaffee* decision in *Dixon v. City of Lawton, Okl.*, 898 F.2d 1443 (10th Cir. 1990), the court stated that "plaintiff has waived her psychotherapist-patient privilege with respect to any communications between her and her psychotherapist as those communications may lead to the discovery of admissible evidence regarding plaintiff's present claim for emotional distress damages." *LeFave*, 2000 WL 1644154, *3.  *See also Fox*, 179 F.R.D. at 306 ("under the governing law in the Tenth Circuit Court of Appeals, plaintiff has waived her psychotherapist-patient privilege with respect to any communications between her and her psychotherapist during the applicable time period as those communications may lead to the discovery of admissible evidence regarding plaintiff's present claim for emotional distress damages.").[18]

_____

waiver of the psychotherapist-patient privilege - has the party placed his or her mental condition at issue - to "the more restrictive issue of whether or not to compel the mental examination of a party under Fed .R.Civ.P. 35(a)."); *Fox*, 179 F.R.D. 303 (would have permitted discovery of psychotherapy records from the applicable time period but did not permit Rule 35(a) exam).  *See also Stevenson*, 201 F.R.D. at 557 (noting *Fox*'s applications of these standards); *Fritsch*, 187 F.R.D. at 623 n.4 (criticizing *Fox*).

[18]In *LeFave*, as in *Fox*, the court noted that "[t]he law in the Tenth Circuit does not distinguish between a plaintiff who intends to rely on the testimony of a treating psychotherapist in support of her case and one who does not."  *LeFave*, 2000 WL 1644154, *3; *Fox*, 179 F.R.D. at 306.

In *Fox*, plaintiff brought an employment discrimination case in which she sought "damages for emotional distress, pain and suffering, humiliation, embarrassment and anguish[.]"  *Fox*, 179 F.R.D. at 304.  Within the discussion on the "discoverability of plaintiff's health care providers and medical records", the Court stated:   "assuming that plaintiff's communications with her psychotherapist occurred during the applicable time period, defendant is entitled to discovery of plaintiff's psychotherapy records."  *Fox*, 179 F.R.D. at 306.

**ii.**     "[T]he federal common law does not recognize a more general physician-patient privilege."  *Sarko*, 170 F.R.D. at 131.  *See also LeFave*, 2000 WL 1644154, *2.  Accordingly, "the court's inquiry regarding the discoverability of plaintiff's general medical records is governed by relevancy standards contained in Fed. R. Civ. P. 26 and considerations of confidentiality."  *LeFave*, 2000 WL 1644154, *2.

Here, a couple of examples are instructive.  In *LeFave*, the court stated that "[m]edical records information is relevant to plaintiff's claim for emotional distress damages.  The information is further relevant to the preparation of defendants' defenses against plaintiff's emotional distress damages claim, because her medical records may reveal stressors unrelated to defendants which may have affected plaintiff's emotional well being."  *LeFave*, 2000 WL 1644154, *2.  In *Fox*, within the discussion on the "discoverability of plaintiff's health care providers and medical records", the Court stated:  "[d]efendant is . . . entitled to discovery of plaintiff's other medical records generated during the applicable time period as the information contained in those records is not privileged and is

----

Both *LeFave* and *Fox* rely upon *Dixon*, stating that it "adopted the rule that a plaintiff who relies on her mental condition as an element of her claim may not assert the psychotherapist-patient privilege to preclude a defendant from obtaining discovery of her mental health records."  *LeFave*, 2000 WL 1644154, *4.  *See also Fox*, 179 F.R.D. at 306.

23

relevant to whether the emotional distress which plaintiff claims to have suffered as a result of defendant's conduct can be attributed in whole, or in part, to some other stressor in her life." *Fox*, 179 F.R.D. at 306.

**c.      Analysis**

In line with decisions that analogize Rule 35(a)'s standard to waiver of the privilege discussed in *Jaffee* and consistent with my conclusion that plaintiff shall submit to a Rule 35(a) examination, I conclude that plaintiff shall permit the inspection and release of her private psychiatric records.  Furthermore, considering Fed. R. Civ. P. 26's definition of relevancy and ¶ 722 of the complaint's mention of medical treatment, I conclude that plaintiff shall permit inspection and release of her private medical records.

As noted within Section I.E.1, defendants teachers, administrators and school district "are willing to execute a protective order indicating that the materials in question, along with any expert reports, are to be used for the purposes of this litigation, and, at the conclusion of this litigation and any and all appeals, the information would either be returned to Plaintiff or destroyed."  Doc. Ent. 172 at 4.  In light of this representation and in an effort to maintain the confidentiality of this information, production of the medical and psychiatric records shall be made subject to a protective order.

**3.      Plaintiff's request for Fed. R. Civ. P. 11 sanctions is denied.**

Plaintiff seeks Rule 11 sanctions concerning defense counsel's conduct regarding the scheduled psychiatric evaluation and concerning defendants' "continuous failures of Late Notification by withholding notification from Plaintiff, to Delay the required time for Plaintiff to

respond." Mtn. at 3 ¶¶ 5-6, at 4-5, at 10 ¶ 7, at 11.[19]  She alleges that defendants intentionally interfered with the proper notification processes.  Mtn. at 10 ¶ 7.

> With regard to how a motion for Rule 11 sanctions is initiated, the rule provides:
>
> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegations, or denial is not withdrawn or appropriately corrected.  If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.   Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

Fed. R. Civ. P. 11(c)(1)(A).

Plaintiff's request for Rule 11 sanctions is denied.  First, plaintiff's request is not contained in a separate motion as required by Fed. R. Civ. P. 11(c)(1)(A).  Second, Rule 11 is inapplicable to discovery: "Subdivisions (a) through (c) of this rule do not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Rules 26 through 37." Fed. R. Civ. P. 11(d).  Therefore, to the extent that the basis of plaintiff's request for sanctions was that defense counsel should have filed a motion for mental examination under Rule 35(a) or that the information requested is not relevant under Rule 26, Rule 11 sanctions would not be appropriate.

## II.    ORDER

In accordance with the foregoing opinion, plaintiff's emergency motion to quash and protective orders from a scheduled intrusive unauthorized psychiatric evaluation, and protection

---

[19]Plaintiff describes the delay in notification by referencing defense counsel's February 1, 2006 letter, the February 6, 2006 postmark, her February 10, 2006 receipt of the letter, and the February 20, 2006 examination date.  Mtn. at 9-10 ¶ 7.

from the inspection or releasing of any of plaintiff's private medical records under HIPPA protection and the Privacy Act of 1974 (Doc. Ent. 160) is DENIED.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of ten days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated 4/7/06

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on April 7, 2006.

s/Eddrey Butts
Case Manager