UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLORIA GAINES-HANNA, *et al.*,

      Plaintiffs,

v.

FARMINGTON PUBLIC SCHOOL DISTRICT,
*et al.*,

      Defendants.
_____/

Case No. 04-74910

Hon. John Corbett O'Meara

**OPINION AND ORDER GRANTING THE TEACHER
DEFENDANTS' AND THE ADMINISTRATIVE DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL**

Before the court are the following motions (1) the Teacher Defendants' motion for dismissal or summary judgment, filed December 19, 2006; (2) the Administrative Defendants' motion to dismiss or for summary judgment, filed January 18, 2007; and (3) Plaintiff's motion for the appointment of counsel, filed February 28, 2007.[1]  Plaintiff filed a combined response to the Defendants' motions for summary judgment on March 16, 2007.  The Teacher Defendants and the Administrative Defendants submitted reply briefs.  The Teacher Defendants also filed a

---

[1] The "Teacher Defendants," numbered as in the caption, are (17) Janet Carlton; (18) James O'Leary; (19) Todd Schultz; (20) Stephanie Lanning; (21) Pam Sofferin; (22) Nancy Bendick; (23) Angie Genthe; (24) Nancy Price; (25) Chris Deighton; (42) Tom Gorman; (43) Chuck Shepard; (44) Tom Negoshian; (45) Linda Perkins; (46) Tom Seremet; (58) Jeff Simpson; and (59b) Mary Keen.  The "Administrative Defendants," numbered as in the caption, are (1) Farmington Public Schools District; (2) Superintendent C. Robert Maxfield; (3) Linda K. Enberg; (4) Priscilla L .Brouillette; (5) Gary Sharpe; (6) R. Jack Inch; (7) Cathleen M. Webb; (9a) Sue Zurvalec; (10) Estralee Michaelson; (11) James R.  Myers; (12) Patricia A. Brumback; (14) Richard B. Jones; (15) Robert Jones; (16) Linda Fox; (41) Rose Marie Simon; and (59c) Angelia Smith.

brief in opposition to Plaintiff's motion for appointment of counsel on March 22, 2007. Pursuant to LR 7.1(e)(2), the court will decide this matter on the briefs and without oral argument.

## BACKGROUND FACTS

On December 16, 2004, Plaintiff Gloria Gaines-Hanna filed this suit against the Farmington Public School District and sixty-two other defendants, including teachers, coaches, counselors, and school administrators. Plaintiff's 277-page complaint alleges constitutional and statutory violations over a period of ten years with respect to the treatment of her children, Najib and Najiba, in Farmington public schools. The court has dismissed Plaintiff's state claims, as well as the claims of the Hanna children. The remaining claims assert the constitutional rights of Ms. Gaines-Hanna, only, and are as follows: (1) a claim in Count I that Defendants violated her parental rights arising under substantive due process; (2) a claim in Count II alleging violations of her First Amendment rights to free speech and expression; and (3) a conspiracy claim in Count V, to the extent it applies to conspiracies to deny Ms. Gaines-Hanna's parental rights or right to free speech. See Opinion and Order dated May 4, 2005.

On September 22, 2006, the court dismissed Plaintiff's claims against twenty-nine of the Defendants on statute of limitations grounds. The court also dismissed Plaintiff's claims against Defendants Duane Fox and Rose Mackie on November 8, 2006. The Teacher Defendants and the Administrative Defendants now seek dismissal of Plaintiff's claims on the ground that she has failed to allege cognizable constitutional violations.

## LAW AND ANALYSIS

**I.     Standard of Review**

Defendants seeks dismissal of Plaintiff's claims against them pursuant to Rules 12(b)(6)

and 56 of the Federal Rules of Civil Procedure. Dismissal pursuant to Rule 12(b)(6) is appropriate "if it appears that the non-movant can prove no set of facts in support of her claim that would entitle her to relief. While reviewing courts construe the complaint in the light most favorable to the plaintiff, and accept all factual allegations as true, a court is not required to accept as true unwarranted legal conclusions and/or factual allegations." Harvey v. Great Seneca Financial Corp., 453 F.3d 324, 327 (6th Cir. 2006).

Summary judgment pursuant to Rule 56 is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

**II.     The Teacher Defendants' Motion**

   **A.     Substantive Due Process and Free Speech Claims**

To state a cause of action under 42 U.S.C. § 1983, Plaintiff must demonstrate "(a) deprivation of a right secured under the Constitution or federal law; and (b) that deprivation was caused by a person acting under color of state law." Alkire v. Irving, 330 F.3d 802, 813 (6th Cir. 2003). Here, Plaintiff alleges that the Teacher Defendants deprived her of her substantive due process right to direct the upbringing of her children and of her right to free speech. The Supreme Court has held that the right of parents to make decisions regarding the care, custody,

and control of their children is a fundamental liberty interest protected by the Due Process Clause.  See Troxel v. Granville, 530 U.S. 57, 66 (2000); Meyer v. Nebraska, 262 U.S. 390 (1923) (statute prohibiting teaching subjects in foreign languages was arbitrary interference with parents' right to control education of children); Pierce v. Soc'y of Sisters, 268 U.S. 510, 534-35 (1925) (statute requiring children to attend public school "unreasonably interfere[d] with the liberty of parents and guardians to direct the upbringing and education of children under their control").

The right of parents to control the upbringing and education of their children is not without limits.  See e.g., Runyon v. McCrary, 427 U.S. 160, 177 (1976) (no parental right to educate children in private, segregated schools); Blau v. Fort Thomas Pub. Sch. Dist., 401 F.3d 381, 395 (6th Cir. 2005) (holding that school dress code does not interfere with parent's fundamental right to direct the education of his child).  The Sixth Circuit explained the contours of this right with respect to the educational system in Blau:

> The critical point is this: While parents may have a fundamental right to decide *whether* to send their child to a public school, they do not have a fundamental right generally to direct *how* a public school teaches their child.  Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or, as here, a dress code, these issues of public education are generally "committed to the control of state and local authorities."

Id. at 395-96 (citations omitted).

In general, Plaintiff alleges that the Teacher Defendants violated her right to direct the upbringing of her children and her right to free speech by refusing to meet or communicate with her on her terms.  In her brief Plaintiff contends:

> The Farmington School district Instructors are predominately 94% Caucasian (white) and females are in the majority. Plaintiff points this out because in the twelve years Plaintiff children have only had one African American (black) instructor and she was a high school teacher, who Plaintiff had to communicate with and never ever had a problem. However, every single female teacher of the Caucasian race played the race card, fearful of a black wom[an], and all the white men teachers went along, and it was done so blatantly without any resistant (sic) from the person in charge of the school. *All Defendants were ordered not to deal with Plaintiff, send any and all contact or communication to the principal in every single school.* This is the way I was discriminated against on a daily basis in the Farmington School District. From all the white teachers, and I do no know of any other white parent in twelve years who was treated that way.

Pl.'s Br. at 12 (emphasis added). Plaintiff also takes issue with a letter sent to her by the school district's attorney. See Pl.'s Ex. 1. In the letter, dated November 19, 2004, the attorney wrote:

> The language, customs and behaviors you have exhibited in your correspondence and dealings with district personnel will no longer be accepted. By the same token, certain responses of school staff will be curtailed as the district can no longer devote the amount of time requested by you for issues which are unreasonable, inappropriate and frequently based on your perceptions which are not shared by anyone else.
>      I am informed, for example, that you have declared that a school guidance counselor may not meet with your daughter for ten minutes without you being present. Similarly, you have refused to deal with Ms. Linda Fox or Dr. Ron Jones. Other unacceptable behaviors include your frequent demands for immediate responses to your requests, other demands that you receive responses "in writing," and requests that school personnel or the district conduct investigations or hearings. Likewise, I am informed that at other times you have made inappropriate demands, intemperate remarks and personal attacks toward school personnel. . . .
>      Essentially your conduct interferes with school district staff's ability to perform their jobs. . . .
>      Accordingly, you are placed on notice to abide by all school rules and building policies and conduct yourself in a civil and polite manner. You will no longer be receiving the special attention and additional services that you have received in the past.

> Your demands or requests for special conferences, phone calls and
> meetings with staff member will not necessarily be accommodated.
> Displays of anger, slanderous statements, raised voices,
> accusations, rude behavior, finger pointing or intimidating conduct
> will no longer be tolerated by district staff. . . .

Pl.'s Ex. 1.

As a general matter, the right to direct the upbringing and education of one's child does not include unfettered access to school property, teachers, administrators, or coaches. See Lovern v. Edwards, 190 F.3d 648, 655 (4th Cir. 1999) ("School officials have the authority to control students and school personnel on school property, and also have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately on school property."); Mejia v. Holt Pub. Schs., 2002 WL 1492205 *6 (W.D. Mich. Mar. 12, 2002) ("[T]his Court declines to hold that parents have a fundamental right to participate in their children's education through physical access to school property, teachers, or administrators."). With respect to each individual Teacher Defendant, Plaintiff has not alleged facts that, if true, show that her parental right to direct the upbringing and education of her children has been violated.

For example, with respect to Teacher Defendant Pam Sofferin, Plaintiff alleges that she "violated Plaintiff['s] rights to free speech with deliberate indifference to deprive Plaintiff of her rights to the up bringing of her children, and played the race card by pretending to be afraid of a black wom[an], where she denied all contact and any writing and instructed me to deal with Defendant Richard Jones. This was the usual response or long delays or she just would not

return any call." Pl.'s Br. at 13. See also Pl.'s Compl. at ¶¶ 471, 479 482-84.[2] With respect to Teacher Defendant Angie Genthe, Plaintiff asserts, "she claimed she was so scared of Plaintiff that she fear for her life . . . and when I arrived at the school for a meeting she set up, I was told by Defendant Richard Jones and Defendant Carlton, that [I] would not be allowed to be with a teacher alone, which violated Plaintiff rights to free speech with deliberate indifference to deprive Plaintiff of her rights to the up bringing of her children. . . ." Pl.'s Br. at 13-14. Plaintiff's allegations against the other Teacher Defendants are similar. See Pl.'s Br. at 14-18.

Assuming that Plaintiff's allegations regarding the Teacher Defendants are true, they do not constitute a violation of Plaintiff's parental rights arising from substantive due process. Nor do such allegations constitute a First Amendment violation. See Lovern, 190 F.3d at 656 ("The right to communicate is not limitless."). The constitution does not require that teachers communicate with parents on terms imposed by the parents. Therefore, the court will grant the Teacher Defendants' motion for summary judgment with respect to Counts I and II of Plaintiff's complaint (due process and free speech claims).

### B. Conspiracy Claim pursuant to 42 U.S.C. § 1985

The Teacher Defendants also seek dismissal of Plaintiff's conspiracy claim, set forth in Count V fo her complaint. The Teacher Defendants point out that this claim does not appear to be brought against them, but only against Defendants Duane Fox and Rose Mackie, who have

---

[2] Plaintiff alleges in her complaint that Sofferin and other teachers failed to prevent Plaintiff's son from being harassed and bullied. Such claims involve Plaintiff's son's rights, not Plaintiff's parental rights. See generally Doe v. Special Sch. Dist. of St. Louis County, 637 F. Supp. 1138, 1146 (E.D. Mo. 1986) (abuse of children by bus driver violated children's rights, but not those of their parents). The claims brought on behalf of Plaintiff's children have already been dismissed by the court. See May 4, 2005 Order.

already been dismissed from this suit. To the extent Plaintiff intends to assert a conspiracy claim against the Teacher Defendants, however, her claim cannot succeed.

To prevail on such a claim, Plaintiff must prove the following: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Brotherhood of Carpenters v. Scott, 463 U.S. 825, 828-29 (1983). The conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Id. (citation omitted). As discussed above, Plaintiff has not demonstrated a constitutional violation. Further, Plaintiff has not demonstrated that any Teacher Defendant was motivated by racial animus. Although Plaintiff alleges that she was discriminated against in a conclusory fashion, she has not articulated or supported facts that warrant an inference of racial animus on the part of any individual Teacher Defendant. See Wade v. Knoxville Utilities Bd., 259 F.3d 452, 463 (6th Cir. 2001) ("[C]onclusory allegations and [the plaintiff's] perceptions . . . are not sufficient to stave off summary judgment."). Accordingly, the court will grant summary judgment in favor of the Teacher Defendants on Plaintiff's Count V.

### III.    The Administrative Defendants

#### A.    Substantive Due Process

Plaintiff's remaining claims against the Administrative Defendants also involve alleged violations of substantive due process and free speech. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property,

without due process of law."  See generally DeShaney v. Winnebago Cty. Dept. of Social Serv., 489 U.S. 189, 194-97 (1989).  Plaintiff appears to base her due process claim against the Administrative Defendants upon the "state-created-danger" theory of liability.[3]  See Kallstrom v. City of Columbus, 136 F.3d 1055, 1065-66 (6th Cir. 1998).  In her response brief, she alleges as follows:

> All Defendants "under the color of the law" had the administrative ability to make any policy change by protecting Plaintiff and her family from the increased danger which they lived with for over 12 years . . . All Defendant Deliberate Indifference on not taking a firm stand on and against the students who was violating Plaintiff liberty and property put Plaintiff in a state-created-danger theory of constitutional Liability under section 1983, and created affirmative acts that increased the risk, a special danger to the Plaintiff as distinguished from the public at large, and the requisite degree of state culpability.

Pl.'s Br. at 19.  Plaintiff contends that the Administrative Defendants violated her right to due process by failing to protect her children from bullying and harassment and by failing to protect her from harassment and the vandalism of her home.

In general,

> [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.  The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. . . . Its purpose was to protect the people from the State, not to ensure that the State protected them from each other. . . .  As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

---

[3] Defendants assert that such a claim was not properly plead in Plaintiff's complaint.  Given Plaintiff's pro se status, however, the court will liberally construe her complaint and address this issue.

DeShaney, 489 U.S. at 195-97.  However, "while the state generally does not shoulder an affirmative duty to protect its citizens from private acts of violence, it may not cause or greatly increase the risk of harm to its citizens without due process of law through its own affirmative acts." Kallstrom, 136 F.3d at 1066.  This theory of liability is referred to as the "state-created-danger" theory.  "Liability under the state-created-danger theory is predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence." Id.

Plaintiff alleges that the Administrative Defendants failed to protect her and her children from the acts of private individuals.[4]  Plaintiff contends that the Administrative Defendants failed to take a "firm stand" against the "students who [were] violating Plaintiff's liberty and property." Pl.'s Br. at 19.  A failure to act, however, is not an "affirmative act" under the state-created-danger theory. See Jones v. Reynolds, 438 F.3d 685, 691-92 (6th Cir. 2006).  Cf. Kallstrom, 136 F.3d at 167 (state put uncover police officers and their families in "special danger" by releasing personal information, including addresses and names of relatives, to attorney of gang members).  Plaintiff has not alleged affirmative acts by the Administrative Defendants that exposed her to any "special danger."  Accordingly, Plaintiff cannot sustain her substantive due process claim against the Administrative Defendants.

**B.   First Amendment**

Plaintiff generally alleges that most of the Administrative Defendants "denied all contact and any writing" with her and "conspired to stop Plaintiff from her speech."  See Pl.'s Br. at 20-

---

[4] The claims brought on behalf of Plaintiff's children have been dismissed. See note 2, supra.

23. Plaintiff also suggests that she suffered retaliation for engaging in activity protected by the First Amendment, although she does not specify how the Administrative Defendants allegedly retaliated against her.

The First Amendment does not guarantee Plaintiff an audience with public officials such as the Administrative Defendants. See Minnesota State Bd. for Community Colleges v. Knight, 465 U.S. 271, 283-84 (1984) (holding the appellees had "no constitutional right to force the government to listen to their views"). Accordingly, even assuming Plaintiff's allegations are true, the Administrative Defendants did not violate Plaintiff's rights by denying "all contact and any writing" with her.

The only specific allegation Plaintiff makes with respect to her First Amendment claim involves her attendance at a May 20, 2003 school board meeting. Plaintiff alleges that she attended to "speak on the shooting into Plaintiff home and blowing her door into her home." Pl.'s Br. at 20. Plaintiff contends that she was questioned about what she was going to say and was called to speak last. Plaintiff alleges that she was only allowed to speak for five minutes and that the meeting was not broadcast on cable as usual. See Pl.'s Compl. at ¶¶ 504-506.

Plaintiff's allegations regarding the board meeting do not constitute a First Amendment violation. Plaintiff admits that she was permitted to speak for five minutes and does not allege that she was prevented from speaking based upon the content of her message. See Kindt v. Santa Monica Rent Control Bd., 67 F.3d 266, 271 (9th Cir. 1995) (noting that "limitations on speech at those [board] meetings must be reasonable and viewpoint neutral, but that is all they need to be"). Accordingly, the court will dismiss Plaintiff's First Amendment claim against the Administrative Defendants.

### C. Conspiracy pursuant to 42 U.S.C. § 1985

Plaintiff also asserts a conspiracy claim against some of the Administrative Defendants, including Superintendent Maxfield and the school board members. As discussed above, the conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." United Brotherhood of Carpenters v. Scott, 463 U.S. 825, 828-29 (1983) (citation omitted). Again, although Plaintiff alleges that she was treated differently because of her race, she has not articulated any facts warranting a inference of racial animus on the part of the Administrative Defendants. Accordingly, the court will dismiss Plaintiff's Count V against the Administrative Defendants.

### IV. Plaintiff's Motion to Appoint Counsel

Plaintiff has requested that the court appoint an attorney to represent her in this matter. Defendants oppose Plaintiff's request. It is within the court's discretion to appoint counsel for an indigent litigant in a civil case. 28 U.S.C. § 1915(d); Lavado v. Keohane, 992 F.2d 601, 604 (6th Cir. 1993). Appointment of counsel in a civil case is not a constitutional right, but "a privilege that is justified only by exceptional circumstances." Id. at 605-606. Appointment of counsel "is not appropriate when a *pro se* litigant's claims are frivolous, or when the chances of success are extremely slim." Id. at 606 (citations omitted).

As Defendants point out, Plaintiff testified in her deposition that she presented her case to "quite a few" attorneys, all of whom declined to represent her. See Pl.'s Dep. at 33-42 (July 13, 2005). Plaintiff does not claim to be indigent. Moreover, Plaintiff has demonstrated that she is capable of presenting her claims to the court and of representing herself in this matter. Primarily, however, the court declines to appoint counsel for Plaintiff because her claims lack

merit.  As discussed above, Plaintiff's claims do not have a constitutional dimension and her chances of success, should she appeal, are extremely slim.  Therefore, the court will deny Plaintiff's motion to appoint counsel.

### **ORDER**

IT IS HEREBY ORDERED that the Teacher Defendants' December 19, 2006 motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that the Administrative Defendants' January 18, 2007 motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's February 28, 2007 motion to appoint counsel is DENIED.

This opinion and order disposes of Plaintiff's remaining claims.  Therefore, IT IS HEREBY ORDERED that Plaintiff's complaint is DISMISSED WITH PREJUDICE.  Judgment will be entered in favor of all Defendants.


s/John Corbett O'Meara
United States District Judge


Dated:  April 20, 2007



I hereby certify that a copy of the foregoing Opinion and Order was served upon the parties of record on this date, April 20, 2007, by electronic and/or ordinary mail.


s/William Barkholz
Case Manager